[S. F. No. 14601. In Bank.—November 1, 1933.]

ELIZABETH G. TRIMBLE et al., Appellants, v. RUSSELL TRIMBLE, a Minor, etc., et al., Respondents.

Dutton & Gilkey and Lewis E. Lercara for Appellants.

Fernhoff & Sevier, Milton Sevier and Lewis V. Kaye for Respondents.

Morrison, Hohfeld, Foerster, Shuman & Clark, L. R. Weinmann and W. E. Licking, as *Amici Curiae* on Behalf of Respondents.

CURTIS, J.—This is an action to set aside deeds of alleged community property, made by decedent husband without the consent of his wife.

The decedent, Alexander J. Trimble, and plaintiff Elizabeth G. Trimble were married on April 17, 1892, and lived together as husband and wife up to the time of his death. On December 21, 1915, they purchased with community funds a house and lot, herein called the Fruitvale property. On February 1, 1920, they contracted to purchase an orchard, herein called the Contra Costa property, and payments were completed and a deed taken August 21, 1925. Each of the deeds was in the names of both spouses. Early in 1929, Alexander Trimble became seriously ill, being confined to his bed with a nurse in constant attendance. On May 23, 1929, he made deeds of the above-mentioned properties in favor of his children, defendants herein, reserving a life

estate to his wife. He died testate June 19, 1929. By the terms of his will, all of his property was left to his wife. On October 29, 1929, she commenced this action to set aside the deeds to defendants. The trial court found that all of the land was community property; that it was conveyed to the defendants for valuable consideration; that as a result the defendants were owners of the Fruitvale property, subject to plaintiff's life interest therein, and that plaintiff was entitled to a one-half interest in the Contra Costa property, subject to administration of the decedent's estate. Plaintiff appealed.

There are two issues of fact which must be considered prior to any discussion of the law. The trial court found that both parcels of land were community property. Appellant contends that under the presumption established by section 164 of the Civil Code, where property is acquired by a married woman and her husband, they become tenants in common, a one-half interest therein being the separate property of the wife, and the remaining one-half interest being the community property of the spouses. (See *Dunn* v. *Mullan*, 211 Cal. 583 [296 Pac. 604, 77 A. L. R. 1015]; *Estate of Regnart*, 102 Cal. App. 643 [283 Pac. 860].) This presumption is, of course, rebuttable, and the trial court found that it had been overcome by the evidence. While the record is meager, we have concluded that the finding may be upheld. One witness testified to an express declaration of Mrs. Trimble that all of the property was community property. One of the sons testified that his father had declared with reference to the Contra Costa property that "he had bought a place for himself to take care of his future, in case he would lose his job, he would have an income for himself the rest of his life". This declaration, according to the witness, was made in the presence of Mrs. Trimble. There is, of course, no doubt that the property was purchased with community funds, and the presumption of gift by the husband may be deemed sufficiently controverted by the evidence.

The second issue of fact is presented by the deeds to defendants. They are entitled "Deeds of Gift" and recite a consideration of "love and affection". In spite of this language, however, the court found that the true consideration was a promise by the children to pay for the medical ex-

penses and nurse's compensation during his illness. There is testimony in the record showing that the plaintiff attempted to discharge the nurse, and that the children, at the decedent's request, agreed to keep her and pay her wages; but there is no evidence at all to show that this obligation was undertaken as consideration for the transfer of the properties. Our examination of the record convinces us that the instruments are what they purport to be, namely, deeds of gift, and that there is no evidence to support the finding of the court that they were transfers for valuable consideration.

The determination of these two issues of fact leaves for decision practically one question of law and that is the legal effect of these two gift deeds executed by Alexander J. Trimble to his children, the defendants herein. The two parcels of land involved herein were acquired by Mr. and Mrs. Trimble at different dates. The respective rights of husband and wife in community property are determined by the law in force at the date of its acquisition. (*Spreckels* v. *Spreckels,* 116 Cal. 339 [48 Pac. 228, 58 Am. St. Rep. 170, 36 L. R. A. 497]; *McKay* v. *Lauriston,* 204 Cal. 557 [269 Pac. 519].) In 1915, when the Fruitvale property was acquired by the Trimbles, the law in force gave to the husband the management and control of the community property, but prohibited him from making a gift thereof or conveying the same without a valuable consideration unless the wife in writing consent thereto. (Sec. 172, Civ. Code.) In 1920, when the Contra Costa property was contracted for, and in 1925, when the deed to said property was received, the statute gave the husband the same management and control of the community real property, but provided that the wife must join with him in executing any instrument by which the community property or any interest therein is sold, conveyed or encumbered. (Sec. 172a, Civ. Code, as originally adopted in 1917.) It will thus be seen that while the section of the code in force on the respective dates when the two parcels of real property were acquired differed in some respects, yet in each case the statute required the wife either to join in or consent to a deed made by the husband during the lifetime of the wife, whereby he sought to convey an interest in community property. Section 172 of the Civil Code, at the time the Fruitvale property was acquired, required her signature or

consent in case there was no consideration for the deed, and section 172a of the Civil Code, at the time of the acquisition of the Contra Costa property, required her signature or assent to all conveyances of the community real property. Conveyances of community property acquired since the effective dates of these code sections by a husband without the consent, either oral or written, of the wife, have been before the courts on several occasions. It has been held, almost without exception, that such conveyances are not void but are voidable as to the wife's half of the community property and valid as to the husband's half. The following cases so hold: *Dargie* v. *Patterson,* 176 Cal. 714 [169 Pac. 360]; *Lahaney* v. *Lahaney,* 208 Cal. 323 [281 Pac. 67]; *Pretzer* v. *Pretzer,* 215 Cal. 659 [12 Pac. (2d) 429]; *Rice* v. *McCarthy,* 73 Cal. App. 655 [239 Pac. 56]; *Schelling* v. *Thomas,* 96 Cal. App. 682 [274 Pac. 755]; *Pomper* v. *Behnke,* 97 Cal. 628 [276 Pac. 122]. The only apparent conflict in the decisions is found in the case of *Bone* v. *Dwyer,* 74 Cal. App. 363 [240 Pac. 796]. If the opinion in that case contains anything in conflict with the doctrine above announced, it is out of line with the authorities in this state. In *Dargie* v. *Patterson, supra,* the deceased made a gift of community property without the consent of his wife. The latter, after the death of her husband, sought to set aside the deed under section 172 of the Civil Code, as amended in 1891, which provided that the husband could not make a gift of community property unless the wife in writing consent thereto. This court held that the deed should be set aside as to one-half of the property, but that it was valid as to the husband's half. In *Lahaney* v. *Lahaney, supra,* the court passing upon the same question quoted with approval (page 328) the following statement from, *Dargie* v. *Patterson, supra,* at page 718:. "The only logical conclusion is that the wife's right to assail the conveyance where, as here, the action was brought after the husband's death, is limited to an undivided half of the property. During his lifetime the husband, notwithstanding the statutory limitation upon his power of disposition is the owner of the community property. The proviso attached to section 172 does not impair his right to dispose of the property so far as concerns his own interest and. that of those claiming under him." Continuing, this court in the Lahaney case said, "There would thus seem to be no escape from the

effect of our holding in the case of *Dargie* v. *Patterson,* wherein this court upheld the gift to a stranger of the husband's one-half of the community property and only set aside his conveyance as to the wife's or widow's undivided one-half interest therein."

In the more recent case of *Pretzer* v. *Pretzer, supra,* the same question was before this court and in deciding it, we said: "A deed to community property executed without the wife's consent, while ineffective as to her interest, is valid and binding as to the husband's one-half interest. (Citing authorities.) This being so, the grantee named in such a deed would acquire an interest in the property and the deed should not, therefore, be decreed to be wholly void and should not be canceled. From what we have said, it follows that the portion of the judgment canceling the deed is erroneous, as is also the portion quieting respondent's [the wife's] title to all of the property as the wife was the owner of but an undivided one-half interest therein."

We must recognize the force and effect of these decisions of the courts of this state as decisive of the question here involved unless a different rule than that approved in the authorities cited above prevails since the amendment of section 1401 of the Civil Code in 1923. Prior to the amendment of 1923 of section 1401 of the Civil Code, on the death of the husband one-half of the community property went to the wife, and the other half was subject to his testamentary disposition, and in the absence of such disposition went to his descendants, provided there were descendants. By said amendment (now incorporated in the Probate Code as section 201), on the death of either husband or wife one-half of the community property belongs to the survivor, and the other half is subject to the testamentary disposition of the decedent, and in the absence of such disposition, goes to the surviving spouse, subject to the provisions of section 1402 of the Civil Code, which are not material here. This section of the code (1401), in providing for the descent of one-half of the community property of the decedent spouse, simply announces a rule of succession to community property after the death of one of the spouses, and does not purport to fix or define the interest of the spouses in the community property during the life of the spouses. (*Estate of Phillips,* 203 Cal. 106 [263 Pac. 1017].) The rights of the

spouses in community real property, as we have seen, is controlled by section 172a of the Civil Code already referred to. The authorities we have cited, as previously shown, hold that by this section of the code the husband may, without the consent of his wife, dispose of by deed his half of the community property, and such conveyance is binding upon his wife after his death. This right was in no way dependent upon nor limited nor affected by the provisions of section 1401 of the Civil Code, either before or after its amendment in 1923.

But even if the right of the husband to dispose of his interest in the community property by gift deed, without the consent of his wife, were in anywise changed by the amendment of 1923, section 1401 of the Civil Code, this legislation would affect only community property acquired since that date, and would not in any way affect or impair the right of the husband by such a gift deed to convey property then owned by him and acquired previous to the effective date of that amendment. His rights in the community property as fixed by law in force at the time of its acquisition were vested rights, and the statute should not be construed so as to deprive him of any such rights. (*Spreckels* v. *Spreckels, supra.*) As was said by this court in that case: "The operation of the amendment must be confined at least to community property acquired after its passage.",

In the recent case of *McKay* v. *Lauriston*, 204 Cal. 557 [269 Pac. 519], the provisions of section 1401 of the Civil Code, as amended in 1923, giving the wife testamentary power over her one-half of the community property was before this court in a controversy between the husband and the devisees of his deceased wife. The property involved had been acquired after the marriage of the parties. The wife died after the amendment of section 1401 in 1923, the exact date of her death being August 16, 1926. She left a will by which she attempted to bequeath to her two daughters one-half of a parcel of land which was the community property of herself and husband. It was claimed by her devisees that, although the property was acquired prior to 1923, the devise was valid as the deceased died subsequent to the amendment of section 1401 in 1923. In deciding that question this court said (page 565), "It is claimed, however, by appellants that by the subsequent amendment of section

1401 of the Civil Code in 1923, which section was in force as thus amended at the date of the death of said Hattie A. McKay, she was given power to make testamentary disposition of one-half of the community property. There is no question but that by said section 1401 of the Civil Code, as amended in 1923, the wife at her death has been given the power to dispose by will of whatever interest in community property she may have at the time of her death. We have already seen, however, that at the time said real property was acquired the provisions of the code then in force gave to the wife no right in the community property which she could dispose of by will. Could a subsequent statute or amendment to the statute in force at the time the property was acquired invest the wife with a right which she did not possess prior to the enactment of said statute or amendment? This question has frequently been before the courts of this state and particularly in proceedings where the nature and extent of the interest of the wife in the community property of herself and husband have been the subject of controversy. It has been consistently and repeatedly held by this court, beginning with the case of *Spreckels* v. *Spreckels,* reported in 116 Cal. 339 [58 Am. St. Rep. 170, 36 L. R. A. 497, 48 Pac. 228], down to cases of recent determination that amendments, whereby it was sought to lessen, enlarge or change in any manner the rights of the respective spouses in community property will not be given retroactive effect so as to affect the respective rights of the parties in community property acquired prior to the enactment of such amendment. (Citing authorities.)''

From the foregoing authorities we are of the opinion that the deeds executed by the deceased without consideration and without the consent of his wife are valid conveyances as to one-half of the property sought to be conveyed, but may be avoided by his wife as to her half of said community property. This action was instituted for that purpose, and it must, therefore, be held that subject to her life estate, she is the owner of one-half of said two parcels of land and the defendants are the owners of the other half.

Under the ruling as just stated, it will be necessary to modify the judgment rendered by the trial court. By its judgment upon the theory that said deeds were executed for a valid consideration, the trial court found and adjudged

that, subject to the life interest of Elizabeth G. Trimble, the defendants were the owners of the whole of the Fruitvale property, and of an undivided one-half of the Contra Costa property. This judgment correctly determines the rights of the parties as to the Contra Costa property, but it is erroneous in awarding to the defendants the whole of the Fruitvale property, subject to said life estate. Only one-half of the Fruitvale property should have been adjudged to belong to the defendants, subject, of course, to the life estate of their mother.

Another claim is made by the appellants which should be disposed of. This claim involves the debts of the deceased and the costs and expenses of administration. It is contended by the appellants that in no event should the court exempt the husband's half of the community property from the payment of his debts and the costs and expenses of the administration of his estate. Appellants, therefore, ask that the judgment be further modified by the insertion therein of a provision subjecting the husband's half of the community property to the payment of these debts and expenses equally with the community property left undisposed of by him. This contention would have considerable force if the husband had conveyed one-half of *all* the community property belonging to him and his wife. But, as we have seen, his conveyances were made subject to a life interest of his wife in both parcels of land. Furthermore, there was a third piece of real property, which was community property, and which was not included in either of said deeds. The value of this third parcel is not disclosed by the evidence. It further appears that in addition to these three parcels of real property, the community property left by decedent included a bank deposit of approximately $3,000 and a life insurance policy of $5,000. There is no showing made that the deceased was at the time of his death indebted to any appreciable amount. Nor is it shown that the costs and expenses of administration were other than those usually incurred in the settlement of an estate of the size and character of that left by the decedent. It does appear that the court made an order for a family allowance of $100 per month in favor of the surviving wife. Attorney's and executors' fees and incidental expenses should not, in the natural order of events, bring the cost of administration up to anywhere near

the $8,000 and over of the community property undisposed of by the husband. It seems quite evident to us that the amount of community property in the hands of the executors, exclusive of the wife's one-half of the two pieces of real property involved herein, is more than sufficient to meet all the legitimate and necessary costs of administration without subjecting the husband's half to the payment of any part of said costs and expenses.

The judgment, in so far as it adjudicates the rights of the parties herein to the Contra Costa property, is affirmed, but is reversed as to the Fruitvale property, with directions to the trial court to enter a judgment in accordance with the views herein expressed.

Preston, J., Waste, C. J., Thompson, J., and Seawell, J., concurred.

LANGDON, J., Dissenting.—I dissent. I cannot find authority or logic to support the proposition that the husband has a legal "right" to do something which the statute specifically prohibits him from doing, namely, give away the community property or any part thereof without the consent of the wife. If the statute prohibits it, it is voidable at the instance of the party injured, the wife. The "one-half" theory does not arise out of any right of the husband, but as a result of the fact that nearly all the cases were concerned with situations arising after the husband's death, where the *wife's right* was less, prior to the 1923 amendments. At that time she could ordinarily not receive more than one-half of the community property; hence, giving her one-half fully protected her rights. To-day, giving her one-half does not protect the right which the statute expressly confers upon her: to take the whole of the community property, upon death of the husband, unless the husband give one-half away *by will*. A voidable conveyance by the husband is not a substitute for a will.

The majority opinion relies upon the decision in *Dargie* v. *Patterson*, 176 Cal. 714 [169 Pac. 360, 362], which has been followed in many subsequent cases and which should be accepted as a sound and adequate statement of the controlling principles. But an examination of that decision shows that it does not support the conclusion reached by the foregoing opinion.

The rule, and the reasons for the rule, are thus stated in *Dargie* v. *Patterson, supra,* at p. 720 of 176 Cal.: "The widow, upon showing the existence of the facts bringing a conveyance within the terms of the proviso of section 172, is entitled, so far as her rights are concerned, to treat that conveyance as a nullity. She has the right to avoid the conveyance so far as is necessary for the protection of her interest in the property conveyed. *As to her, the case must be regarded as if there had been no conveyance,* and the property had, accordingly, *remained a portion of the community estate, of which the husband had died seised.* Upon his death, she succeeded to one-half of such community estate as heir of the husband." (Italics ours.)

It is at once obvious that the conclusion of the Dargie case to the effect that the wife could recover but one-half of the property, cannot determine the problem presented by the instant case. At the time of that decision the wife's right in community property upon the death of the husband was to receive one-half thereof, save in certain exceptional cases not relevant here. Since 1923, the wife has had the right to receive the whole of the property, in the event that the husband makes no other testamentary disposition thereof. Her *interest,* therefore, is greater than it was at the time of the Dargie decision, and, in accordance with the principles therein declared, her recovery must be greater. We must, in judging plaintiff's claim, regard this case "as if there had been no conveyance", and the property had "remained a portion of the community estate". (*Dargie* v. *Patterson, supra.*) The decedent made no testamentary disposition of his property save to his wife. Consequently she is entitled to succeed to the whole thereof.

Nor can there be any distinction between the two pieces of land on the ground that one was *acquired* prior to the 1923 amendment. It is settled that the right of inheritance is completely subject to legislative control, and that the statute enlarging the wife's right to succeed to community property upon the husband's death applies to property acquired prior to its enactment. (*Estate of Phillips,* 203 Cal. 106 [263 Pac. 1017].) The instant case falls within the rule of the last-mentioned decision. There is no attempted testamentary disposition by the husband to third persons. He has simply made a gift in violation of the statute prohibiting

such gifts. The wife has the right, as explained in the Dargie case, to restore the property to the estate. Thereafter she is entitled to the share she would receive under the rules of succession, which, as we have seen, is in this case the entire property. (See McMurray, Community Property, California Jurisprudence 1930 Supplement, sec. 87, p. 126; *Modern Woodmen of America* v. *Gray*, 113 Cal. App. 729, 734 [299 Pac. 754].) *Lahaney* v. *Lahaney*, 208 Cal. 323 [281 Pac. 67], is not in conflict with this view, for in that case the wife was one of the grantees, and claimed under the deed. (See 18 Cal. Law Rev. 400.) But more important is the fact that the husband in said case died September 9, 1922, prior to the 1923 statute discussed herein, and the question could not, therefore, have been raised.

The judgment should be reversed.